## ATTACHMENT A
### Statement of Facts

*The undersigned parties hereby stipulate and agree that if this matter had gone to trial, the Government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Between in or about August 2015 and on or about September 11, 2015, and between in or about August 2016 and on or about October 15, 2016, in the District of Maryland, and elsewhere, the Defendant, **EMILIO CARR** ("**CARR**"), engaged in the sex trafficking of minors, including Victim 1, Victim 2, and Victim 3, all of who were between 15 and 16 years old at the time they were trafficked by **CARR**. **CARR** recklessly disregarded and had a reasonable opportunity to observe that the victims were under 18 years old.

**CARR** was arrested on two separate occasions by law enforcement officers from the Prince George's County Police Department Vice Intelligence Squad ("PGPD") and the FBI Baltimore Field Office Maryland Child Exploitation Task Force ("MCETF") for the above offenses: first, on September 11, 2015, for offenses related to Victim 1, and second, on October 15, 2016, for offenses related to Victims 2 and 3.

**CARR** utilized social networking websites, including "Backpage.com" to advertise prostitution services for his prostitutes, including Victims 1 and 2. "Backpage.com" is commonly used by prostitutes and "pimps" to advertise sexual services. The advertisements provided a description of the prostitute, a picture of a woman (typically not the actual prostitute), and contact information to secure an appointment or "date" with the prostitute. **CARR** monitored the advertisements and coordinated with "clients" to arrange for prostitution services with Victims 1 and 2.

**CARR** utilized multiple cell phones and provided Victims 1 and 2 with cell phones, with which **CARR** and the victims could post ads for prostitution and communicate with potential clients for Victims 1 and 2.

**CARR** managed the day-to-day activities of the prostitution business. **CARR** arranged for the transportation of Victims 1 and 2 to locations in Maryland and the District of Columbia, where Victims 1 and 2 met with "clients," and **CARR** was present during such transport. **CARR** also arranged payment for the hotel rooms in which Victims 1 and 2 engaged in prostitution. At the end of each "date," **CARR** coordinated with Victims 1 and 2 to personally retrieve the money. **CARR** kept at least a portion of the proceeds earned by Victims 1 and 2 for acts of prostitution.

**CARR's** sex trafficking of minor victims affected interstate commerce through his use of the fee-based advertising service Backpage.com to advertise the victims for prostitution over the internet, the use of hotel rooms at national hotel chains that obtain supplies from outside Maryland and whose businesses affected interstate commerce, and the provision and use of condoms, which were manufactured outside of Maryland, for the commercial sex acts.

11

\* \* \*

Between in or about August 2015 and on or about September 11, 2015, **CARR** and his co-conspirators recruited Victim 1 to engage in commercial sex acts under the direction of **CARR** and his co-conspirators. Between in or about August 2015 and on or about September 11, 2015, in the District of Maryland and the District of Columbia, Victim 1 engaged in commercial sex acts at the direction of **CARR** and his co-conspirators including, in one incident, Victim 1 engaged in prostitution with two male clients in Room 227 at the Motel 6 in Camp Springs, Maryland. The two males paid the money for the commercial sex acts directly to **CARR**.

On or about September 11, 2015, PGPD and MCETF found **CARR** in Room 227 at the Motel 6 in Camp Springs, Maryland, with Victim 1, an adult female prostitute, and a male co-conspirator. PGPD searched the motel room pursuant to a valid search warrant and recovered three cellular phones, United States currency, and condom wrappers.

The cell phones **CARR** used to conduct the prostitution business included the three cellular phones located in Room 227 of the Motel 6 in Camp Springs, Maryland, on September 11, 2015. These phones were searched pursuant to valid search warrants, and law enforcement found numerous texts indicating dates for prostitution during the relevant time period.

\* \* \*

In or about August 2016, **CARR** recruited Victim 2 to engage in commercial sex acts under the direction of **CARR**. Between in or about August 2016 and on or about October 15, 2016, in the District of Maryland, Victim 2 engaged in commercial sex acts at the direction of **CARR**.

On or about October 14-15, 2016, **CARR** and his co-conspirators attempted to recruit Victim 3 to engage in commercial sex acts under the direction of **CARR**, even though Victim 3 had told **CARR** that she was 15 years old.

On or about October 14, 2016, Victim 2 engaged in a prostitution date with a male client in Room 242 of the Motel 6 in Capitol Heights, Maryland, which was set up by **CARR**. Victim 2 provided approximately $140 to **CARR** as proceeds from Victim 2's engagement in the commercial sex act.

On or about October 15, 2016, PGPD and the MCETF, found **CARR** in Room 242 of the Motel 6 in Capitol Heights, Maryland, with Victim 2 and Victim 3. PGPD searched the motel room pursuant to a valid search warrant and recovered five cellular phones, drug paraphernalia, and condoms.

The cell phones **CARR** used to conduct the prostitution business included the following phones located by law enforcement on October 15, 2016: 1) a cellular phone with a gold in color case (LG Model LGMS330 S/N 607CYJZ8881300 with MetroPCS SIM Card S/N 89012604719425635 69F), which was seized incident to arrest, 2) a cellular phone with a cracked screen (Motorola Model XT1526 FCC ID IHDT56QC7 with Sprint SIM Card S/N 89011201000343568802), which was located by law enforcement in the hotel room 242 on the

nightstand, and 3) a cellular phone (Samsung Galaxy Prevail LTE Model SM-G360P FCC ID A3LSMG360P with Sprint SIM Card S/N 89011200002019998702), located by law enforcement in the hotel room 242 on the table near the television. Law enforcement also located an LG Model cellular phone LGMS395 with S/N 412CYUK538742 with a cracked screen in the hotel room 242. **CARR** provided this phone to Victim 2 for Victim 2's use to communicate with clients and with **CARR** and post ads on Backpage.com.

**CARR**'s Facebook account "EMONAMINIT THUGZ" was searched pursuant to a valid search warrant. From October 2016 to January 2017, **CARR** posted images publicly to the account that contain **CARR** and Victims 2 and 3. The first post from October 4, 2016 is an image with Victim 2 in a hotel room with **CARR** holding currency. The post containing the image includes the text from October 11, 2016, "Since Day One She Been With Da GANG #CAKES #PimpsUp #GMS." A second post contains **CARR** and Victim 2 in a hotel room with cellular phones. The publically available post with the image includes the text: "Every City Every State I Keep a HOE With Me #LostPicWithCakes #PimpsUp #GMS." A third post, posted on January 24, 2017, contains **CARR** in a hotel room with Victims 2 and 3, with the comment "All I Want Is The $$$" and # GMS and #WelcomeHomeLulu.

The phones recovered from hotel room 242 and pursuant to **CARR**'s arrest on October 15, 2016, were searched pursuant to valid search warrants. Law enforcement found in the phones numerous texts indicating dates for prostitution as well as the photos that were posted on social media during the relevant time period.

\* \* \*

I have read this statement of facts and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

7/21/17
Date

_Emilio C._
Emilio Carr

I am the attorney for the Defendant, Emilio Carr. I have carefully reviewed the statement of facts with him.

7/24/17
Date

_John Chamble_
John Chamble, Esq.

13